## IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

Frank Gori and James Rosenfield,

        Plaintiffs,

    vs.

Brij Sharma,

        Defendant.

---

### *VERIFIED COMPLAINT*

Plaintiffs Frank Gori ("Gori") and James Rosenfield ("Rosenfield") (together, "Plaintiffs"), by and through their attorneys, file this Complaint against Defendant Brij Sharma for (1) violation of Florida Statute § 540.08; (2) common law misappropriation of name and likeness; and (3) violation of Florida Statute § 517.301.

### I.    NATURE OF THE CASE

This case arises due to the Defendant's distribution of a Prospectus marketing a non-existent investment vehicle that falsely states and implies that Plaintiffs are "Advisors" to a new investment fund, when in fact they are not. Plaintiffs never even knew about, let alone agreed to participate in the fund at all, much less consented to their names and images appearing in the advertisement and endorsement of the fund to potential investors. Plaintiffs bring this action seeking injunctive relief and damages relating to the unsanctioned use of Plaintiffs' names and likeness and the harm that has resulted.

## II.    PARTIES

1.    Plaintiff Gori is an individual resident of Novelty, Ohio.  Gori is a member of Naples Technology Ventures, LLC ("NTV") and NTV Frontier Fund, LP, both of which are Florida entities.

2.    Plaintiff Rosenfield is an individual resident of Baltimore, Maryland. Rosenfield is a member of Naples Technology Ventures, LLC; NTV Frontier Fund, LP; and NTV Prosperity Fund, LP, all of which are Florida entities.

3.    Defendant Brij Sharma is an individual resident of Collier County, Florida.  He is a member of Naples Technology Ventures, LLC; NTV Frontier Fund, LP; NTV Prosperity Fund, LP; and NTV Management, LLC, all of which are Florida entities.

## III.    JURDISDICTION

4.    Pursuant to 28 U.S.C. § 1332(a), this Court has original jurisdiction over the Florida state law claims alleged herein because the parties are of diverse citizenship and the matter in controversy exceeds $75,000, exclusive of interest, attorney's fees, and costs.

## IV.    VENUE

5.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391. Further, pursuant to Middle District Local Rule 1.04(b), venue is proper in the Fort Myers Division because the alleged acts giving rise to this claim occurred in a

county or counties of which the Fort Myers Division is comprised as set forth in Local Rule 1.04(a).

## V.    RELEVANT FACTS COMMON TO ALL COUNTS

### A.    The NTV Funds

6.    Plaintiffs are each members of NTV, NTV Frontier Fund, LP ("NTV II"), and NTV Prosperity Fund, LP[1] ("NTV III") (collectively, the "NTV Funds").

7.    Plaintiffs were invited to participate in the NTV Funds by Mike Abbaei. Abbaei holds a 50% membership interest in NTV Management, LLC ("NTV Management"), which serves as the manager for the NTV Funds. Defendant Sharma holds the other 50% membership in NTV Management.

8.    NTV Management and the NTV Funds were created to leverage Abbaei's extraordinary experience in business and the financial industry leading dozens of M&A transactions and corporate investments, transformations, turnarounds, and growth initiatives. Plaintiffs and most of the investors committed to the NTV Funds due to their trust in and familiarity with Abbaei.

9.    According to the terms of NTV Management's Operating Agreement, Abbaei was to be solely responsible for carrying on the day-to-day affairs of the company.  This includes hiring staff, communicating with investors, overseeing

---

[1] Plaintiff Gori was recently bought out of his membership interest in NTV III. He remains an active member in NTV and NTV II.

the operations and performance of portfolio companies, and sourcing new potential deals for NTV Management.

10.    Sharma and Abbaei agreed that Abbaei alone would serve as the Manager of NTV Management due to Abbaei's leadership and managerial skills, his extensive network of potential investors, and his proven track record of business and investment successes. In that position, Abbaei could use his extensive network of business contacts to identify and develop potential investors.  These sophisticated potential investors had confidence that, with Abbaei as the Managing Partner, their investments were being directed by an executive with deep knowledge and understanding of the business and investing landscape.

11.    With Abbaei's direction, over the past seven years NTV Management's investments have been extraordinarily successful.  This success is due to the hard work and business acumen of Abbaei and NTV Management's talented staff. Until recently, Defendant Sharma has been a passive participant in NTV Management, leaving all management activities to Abbaei. Sharma had very limited involvement with NTV Management, other than reaping the rewards of Abbaei's managerial decisions.

12.    During the seven years of NTV's existence, Sharma has effectively been a no-show. Sharma does not source or negotiate deals, attend investor meetings, draft investor reports, review or execute documents, or undertake any

of the day-to-day work of NTV Management.  While he did serve on the board of directors for two portfolio companies for a short time, he was promptly kicked off both.  He no longer serves on boards for or otherwise advises any of the portfolio companies in which the NTV Funds have investments.

13.    During the investors' visits to NTV Management's office, they have always found Abbaei and the other staff hard at work; Sharma is rarely, if ever, present.    Sharma's absence and Abbaei's management have been welcome circumstances to the Plaintiffs, who have reaped the benefits of Abbaei's aptitude and have not witnessed from Sharma any interest in or ability to manage NTV's affairs.

### B.    The Prospectus Advertising Defendant's Non-Existent Fund

14.    In early 2025, on information and belief, Defendant disseminated a Prospectus purporting to advertise a new NTV fund, ostensibly called the "NTV Healthcare Innovation Fund" ("NTV Innovation"). This non-existent fund had not been formed. No entity with that name exists, according to publicly available records in Florida and Delaware. Yet, the Prospectus uses the NTV Funds' logos, branding, and confidential information to endorse the NTV Innovation fund.  Ex. A.

15.    The NTV Innovation Prospectus lists several of NTV Funds' employees, stating and implying that those employees have agreed to be part of

the NTV Innovation fund. Ex. A, p. 19. Upon information and belief, none have agreed to be part of Sharma's fundraising efforts. The Prospectus also purports to identify a collection of highly successful individuals as "Advisors" to Sharma's fund-raising efforts:



16.      Many of these individuals are investors in the NTV Funds. They are not, however, "Advisors" to Sharma or his new fund. Yet without these investors' knowledge or consent, Sharma attempts to boost the credibility of his non-existent fund by falsely representing to potential new investors in Sharma's venture that he has their backing and counsel, thus capitalizing on their reputations.  Ex. A, p. 19. This is fraud, plain and simple.

17.    Plaintiffs Gori and Rosenfield are two of the NTV investors specifically identified in the Prospectus as "Advisors" to the NTV Innovation fund. *Id.* This representation is wholly and completely false. Neither Gori nor Rosenfield ever agreed to be part of any NTV fund that was to be run by Defendant Sharma. Nor would they have, if asked, given their lack of confidence in him.

18.    There is only one reason that Sharma has falsely represented in the Prospectus that Plaintiffs are "Advisors." Sharma is attempting illegally to profit from the Plaintiffs' names, images and reputations. Indeed, the Prospectus falsely represented that Plaintiffs not only endorse, but are also participating in Sharma's fund-raising efforts, thus potentially subjecting them and the other "Advisors" to liability as promotors of Sharma's fund.

### C.    Defendant Conceals His Conduct from Plaintiffs

19.    Defendant has never informed either Plaintiff that they were included on the Prospectus that he distributed to potential investors.

20.    On or about July 2025, Plaintiff Gori called Defendant to ask about the current status of and prospects for some of the portfolio companies in the NTV Funds, and specifically about three of the portfolio companies in NTV. Among other things, Gori asked the Defendant about the status of each NTV Fund, how long it was taking for certain deals to close, and an explanation for why certain

deals were closing later than anticipated. Defendant was extremely vague and unable to provide any substantive answers.

21.    Defendant could not provide details about a single investment, including who was overseeing any particular investment, or what the status was of any deal. However, Defendant gratuitously represented during the call that he was "the largest investor" in the NTV Funds, with $6M invested. This representation was false. On information and belief, Jeff Krol's fund, not Defendant Sharma, is the largest investor by a significant margin.

22.    Days later, Plaintiff Rosenfield called Defendant to ask about a dispute concerning NTV Management and the effect that the dispute is having on the NTV Funds. Rosenfield inquired as to whether Sharma was attempting to take over NTV Management and the management of the NTV Funds. Defendant refused to answer him, saying he needed to ask his lawyer what he could share. Sharma (again) gratuitously represented to Rosenfield that he was "the largest investor" in the NTV Funds, this time stating that he had invested $8M total. These statements were false.

23.    Never during either of these calls did Defendant inform either Plaintiff that he had or was planning to form his own fund. Never on either call did Defendant tell either Plaintiff that he had used their name and likeness in the Prospectus that was shared with potential investors. To this day, the Defendant

has never informed them of either fact, nor sought their consent to participate in the activity or the marketing of NTV Innovation.

24.    Plaintiffs received a copy of the Prospectus, for the first time, on August 14, 2025, months after Defendant disseminated it. This action immediately followed.

**COUNT I**
**Violation of Florida's Unauthorized Publication Act; Section 540.08 Florida Statutes**

25.    Plaintiffs reassert and reallege paragraphs 1 through 24 as if fully restated herein.

26.    This Count I is an action for damages and injunctive relief based on unauthorized publication of likeness in violation of Florida Statute §540.08

27.    Plaintiffs' photographic likeness and names were used by Defendant to directly promote commercial products, including the NTV Innovation, without their written or oral authorization.

28.    Defendant's actions have been and continue to be intentional, willful, wanton, and/or with reckless disregard for Plaintiffs' statutory rights.

29.    As a result of said acts of unauthorized publication of Plaintiffs' photographic likeness and names for commercial purposes, Plaintiffs have suffered and continue to suffer harm and damages.

**WHEREFORE**, Plaintiffs respectfully request:

a.    That Defendant and his respective agents, servants, representatives, predecessors, successors and assigns be enjoined during the pendency of this action and permanently, from continuing to use Plaintiffs' likeness in any commercial manner, and from distributing unauthorized copies of Plaintiffs' likeness, including through the Prospectus, or any other unauthorized manner.

b.    That Defendant be required to account for all gains, profits, and advantages respectively derived by Defendant from his unauthorized use of Plaintiffs' photographic likeness and names; and to pay Plaintiffs such damages as Plaintiffs sustained in consequence of each unauthorized use or such damages as shall appear proper within the provisions of Section 540.08, Florida Statutes;

c.    That Defendant pay Plaintiffs the costs of this Action;

d.    All other relief that this Court may deem just and proper.

### COUNT II
### Florida Common Law Misappropriation of Likeness

30.    Plaintiffs reassert and reallege paragraphs 1 through 24 as if fully restated herein.

31.    This Count II is an action for damages and injunctive relief based upon misappropriation of likeness in violation of the common law state of Florida.

32.    Plaintiffs did not and have not consented, authorized, or approved the use of their likeness by Defendant in connection with Defendant's marketing and promotion of NTV Innovation.

33.    Defendant has obtained (and will continue to obtain) the benefit of Plaintiffs' likeness and associated goodwill by falsely associating Plaintiffs with the Prospectus and promotion of NTV Innovation.

34.    Defendant's unauthorized use of Plaintiffs' likeness has injured Plaintiffs in several ways, including, without limitation, damage to goodwill, affiliation with purported competitor NTV Innovation, and monetary loss.

**WHEREFORE**, Plaintiffs respectfully request:

a.    That Defendant and his respective agents, servants, representatives, predecessors, successors and assigns be enjoined during the pendency of this action and permanently, from continuing to use Plaintiffs' likeness in any commercial manner, and from distributing unauthorized copies of Plaintiffs' likeness, including through the Prospectus, or any other unauthorized manner.

b.    That Defendant be required to account for all gains, profits, and advantages respectively derived by Defendant from his unauthorized use of Plaintiffs' photographic likeness and names; and to pay Plaintiffs such damages as Plaintiffs sustained in consequence of each unauthorized use or such damages as shall appear proper.

c.    That Defendant pay Plaintiffs the costs of this Action;

d.    All other relief that this Court may deem just and proper.

## COUNT III
## Violation of the Florida Securities Investor Protection Act Section 517.301

35.    Plaintiffs reassert and reallege paragraphs 1 through 24 as if fully restated herein.

36.    This Count III is an action for damages and injunctive relief based upon misappropriation of likeness in violation of Florida Statute § 517.301.

37.    Defendant, in connection with the offer or sale of securities, knowingly and willfully falsified, concealed, and covered up a material fact; made false, fictitious, and fraudulent statements and representations; and made and used a false writing or document, knowing the same to contain a false, fictitious, and fraudulent statement, in violation of Fla. Stat. § 517.301(1)(c).

38.    Specifically, Defendant knowingly prepared, circulated, and promoted a Prospectus that misrepresented Plaintiff's support for Defendant's new competing fund and falsely implied that investors in the NTV Funds—including Plaintiffs—have endorsed NTV Innovation. These statements and omissions were material because they created the false appearance of investor and advisor backing, a factor highly relevant to the investment decisions of existing and prospective investors.

39.    Defendant's conduct was willful and intentional, was calculated to mislead other investors and the market, and was undertaken for the purpose of advancing Defendant's competing fund NTV Innovation to the detriment of

Plaintiffs and the NTV Funds in which Plaintiffs are invested. As a direct and proximate result of Defendant's violations of § 517.301, Plaintiff faces irreparable harm in the form of diminished investor confidence, potential investor withdrawals, and an immediate and substantial decline in the value of Plaintiffs' investments.

**WHEREFORE**, Plaintiffs respectfully request:

a.  That Defendant and his respective agents, servants, representatives, predecessors, successors and assigns be enjoined during the pendency of this action and permanently, from further dissemination, publication, or use of the Prospectus or any other materials that misrepresent Plaintiffs' endorsement or support for Defendant's NTV Innovation.

b.  That Defendant be required to account for all gains, profits, and advantages respectively derived by Defendant from his unauthorized use of Plaintiffs' photographic likeness and names; and to pay Plaintiffs such damages as Plaintiffs sustained in consequence of each unauthorized use or such damages as shall appear proper within the provisions of Section 517.301, Florida Statutes;

c.  That Defendant pay Plaintiffs the costs of this Action;

d.  All other relief that this Court may deem just and proper.

Dated:  August 20, 2025

*/s/ Roger B. Handberg*

_____
ROGER B. HANDBERG
Florida Bar No. 241570
GRAY | ROBINSON, P.A.
301 East Pine Street, Suite 1400
Orlando, Florida 32801
Telephone:  407-843-8880
Facsimile:  407-244-5690
Email: roger.handberg@gray-robinson.com
Email: nicole.bradley-shirley@gray-robinson.com

*/s/  Michael D. Randolph*

_____
MICHAEL D. RANDOLPH, ESQ.
Florida Bar No.: 119970
GRAY | ROBINSON, P.A.
1404 Dean Street, Suite 300
Fort Myers, FL 33901
Telephone: 239-552-4810
Facsimile: 239-321-5334
Email: Michael.randolph@gray-robinson.com
Email: Nadine.diamond@gray-robinson.com

*/s/ David A. Rammelt*

_____
DAVID A. RAMMELT (*pro hac vice* forthcoming)
CAITLIN A. KOVACS (*pro hac vice* forthcoming)
Benesch, Friedlander, Coplan & Aronoff LLP  71
South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: 312.212.4949
Email: ckovacs@beneschlaw.com
*Counsel for Plaintiffs*

14

Under penalties of perjury, I declare that I have read the foregoing Verified Complaint and that the facts stated in it are true to the best of my knowledge and belief.

Executed this 20th day of August 2025.


*/s/ Frank Gori*_____         */s/ James Rosenfield*___
Frank Gori                                    James Rosenfield

EXHIBIT A

# NTV
# HEALTHCARE INNOVATION FUND



# DISCLAIMER



This presentation, including any attachments, is intended only for the audience indicated, and may include non-public, proprietary, confidential or legally privileged information. If you are not an intended recipient or an authorized agent of an intended recipient, any dissemination, distribution or copying of the information contained in or transmitted with this presentation and/or email is unauthorized and prohibited. If you have received this presentation and/or email in error, please delete it and any attachments or copies immediately.

We do not make investment recommendations, and this presentation should not be construed as a recommendation. This presentation is not an offer to sell or the solicitation of an offer to buy any security or interest in any fund or investment offering. Any offer to sell or solicitation can only be made through official offering documents that contain important information about risks, fees and expenses. Any investment information contained in this presentation has been secured from sources we believe are reliable, but we make no representations or warranties as to the accuracy of that information and accept no liability for it. This presentation does not contain all of the information required to evaluate the investment opportunity.  Any recipient should conduct its own independent analysis of the investment opportunity. We recommend that you consult with a financial advisor, attorney, accountant, and any other professional that can help you to understand and assess the risks associated with any investment opportunity.

Contains Confidential Information for Naples Technology Ventures Investors: Do Not Distribute

# AGENDA



## ABOUT NTV
Team

## NTV FUNDS
Investment Focus, NTV Funds,

## INNOVATION
Why Now,  Why NTV, Investment Activity

## APPENDIX

3

Contains Confidential Information for Naples
Technology Ventures Investors: Do Not Distribute

# FIRM OVERVIEW



**Naples Technology Ventures (NTV) Has Achieved  Tremendous Success In Early-stage Venture Investing.**

**Naples Technology Ventures (NTV): Driving Success Through Precision And Excellence**

NTV's Remarkable Success Stems From Its Unwavering **Laser-focused Approach** — A Strategy That Prioritizes Precision, Innovation, And Operational Excellence. By Maintaining A Clear Vision And Executing With Purpose, NTV Consistently Empowers Its Portfolio Companies To Achieve Exceptional Growth And Long-term Impact.

- Exceptional Performance In Prior Three NTV Funds

- Strong Investment Returns

- Focus On B2B SAAS With Target Companies That Exhibit Strong Value-add In Their Respective Markets

# FIRM OVERVIEW



**Naples Technology Ventures Invests In Companies That Use Technology As A Disruptive Strategy.**

- **NTV's Strategic Investment Approach**
NTV Identifies Industries Primed For Transformation — Sectors With Outdated Systems, Manual Processes, And Operational Inefficiencies. By Targeting Areas Such As **Healthcare**, NTV Invests In Companies That Can Unlock Greater Scalability, Streamline Operations, And Eliminate Silos Through Innovative Technologies.

- **Focused On Leadership Excellence**
NTV Prioritizes Companies Led By Proven Entrepreneurs With A Track Record Of Success. Strong Management Teams Are Essential, And NTV Actively Supports Its Portfolio Companies In Driving Sustainable Growth. This Includes Fostering Disciplined Financial Practices, Optimizing Sales And Marketing Strategies, And Ensuring Teams Maximize Their Impact.

- **Building Businesses For Long-term Success**
By Combining Strategic Investment With Operational Expertise, NTV Empowers Companies To Scale Efficiently, Enhance Processes, And Achieve Meaningful Growth — All While Reinforcing Sound Financial Discipline And Execution Excellence.

# NTV FUNDS





**Fund I**

**Frontier Fund**

**Prosperity Fund**

*Investments in this fund target female and minority owned companies

**Healthcare Innovation Fund**

**Launch Date**
2018

**Portfolio Composition**
Robotics, AI, IoT

**Check Size**
$250k - $1MM

**Status**
Closed

**Launch Date**
2020

**Portfolio Composition**
Fintech, Healthtech, Insurtech, and Regtech

**Check Size**
$500k - $3.5MM

**Status**
Closed

**Launch Date**
2022

**Portfolio Composition**
Fintech, Healthtech, Insurtech, and Regtech

**Check Size**
$250k - $1MM

**Status**
Closed

**Launch Date**
2025

**Portfolio Composition**
Healthcare

**Check Size**
$2MM - $5MM

**Status**
Open

# NTV FUNDS AND INVESTMENTS



## FUND I



## Frontier Fund



## Prosperity Fund



# TEAM-HEALTHCARE INNOVATION FUND



**NTV Innovation Fund  Partners Have Extensive Backgrounds In Healthcare Investing, M&A, Launching, Establishing And Operating New Businesses In The Healthcare Sector. (Partner Bios On Following Slides)**

- The NTV Innovation Fund Stands Out For Its Partners' Extensive Expertise In Healthcare Investing, M&A, And Building Successful Businesses Within The Healthcare Sector. With A Combined 60+ Years Of Experience, NTV's Partners Have A Proven Track Record As Entrepreneurs And Investors, Driving Innovation And Value Creation In Healthcare.

- What Sets NTV Apart Is Its Deep Understanding Of The Healthcare Industry's Complexities, Coupled With Strategic Insight Into Emerging Technologies. This Enables NTV To Identify And Invest In High-potential Startups, Particularly Those Leveraging AI To Enhance Efficiency, Improve Patient Outcomes, And Disrupt Outdated Models.

- NTV's Distinct Combination Of Investment Acumen, Operational Expertise, And Technology Foresight Makes It Uniquely Positioned To Capitalize On Transformative Opportunities In The Healthcare Sector.

8

Contains Confidential Information for Naples Technology Ventures Investors: Do Not Distribute

# BRIJ SHARMA
## CO-FOUNDER & MANAGING PARTNER



**Brij** is the Co-founder and a Managing Partner at Naples Technology Ventures LLC.  Brij has more than 25 years of experience in the healthcare sector as a successful entrepreneur and investor in the US, India and GCC Region.

Brij founded Tela Sourcing, Inc., a technology and services company focused on the US healthcare insurance market. Tela served more than 50 health insurance clients and was recognized by Gartner as one of the leading providers or specialized healthcare services.  Brij successfully sold Tela to TriZetto, Inc., a healthcare technology and solution company, controlled by Apax Private Equity.



Most recently, through a joint-venture with Davita Inc., Brij founded Express Clinics, a network of owned primary care and population health management centers in India.  Davita is a Fortune 500 US-based healthcare company. Ultimately, Brij provided a successful exit to Davita by purchasing their shareholding.

Brij is also the Founder of MDIndia, one of the largest Third Party Administrators in India.  MDIndia manages more than 15M lives, has $1B+ under management and provides healthcare access through a contracted national network of more than 4,500 hospitals and healthcare centers.

Brij has an MBA from Yale University and is an Engineering Graduate of the College of Engineering, Pune, India.  Brij is an active investor and is currently involved with new ventures in the healthcare technology, outsourcing and mobile commerce space. Brij has also been an advisor to $50M Somerset PE Fund focused on healthcare investments in India.

9

Contains Confidential Information for Naples Technology Ventures Investors: Do Not Distribute

# ROBERT CARLIN OPERATING PARTNER



**Bob** is the Operating Partner at NTV Healthcare Innovation Fund and his career reflects a distinguished track record of leadership, innovation, and successful exits across diverse industries.



As an Operating Partner with Fairfax Partners, an early-stage investment firm, Bob assumed the role of CEO at HealthASPex Services, a healthcare technology startup. He successfully organized and scaled the company, driving significant top- and bottom-line growth before leading its acquisition by Tela Sourcing. Continuing with Tela as President and CFO, Bob further accelerated its growth, culminating in a successful exit to TriZetto, a prominent healthcare technology firm.

Later, Bob joined EDG Partners, a healthcare-focused private equity firm, as an Operating Principal, where he provided leadership to multiple portfolio companies. Most notably, he served as CEO of Peak Risk Adjustment Services, guiding the company to a successful private equity exit.

In his most recent venture, Bob founded My Home Companion, LLC, a skilled and unskilled home healthcare company. Through strategic growth initiatives, he successfully scaled the business before leading its sale to Capital City Nurses, a leading home healthcare provider in the DMV region.

Bob holds a Bachelor of Science in Accounting from Glassboro State University and previously maintained a Certified Public Accountant (CPA) certification (now inactive). With extensive experience in leadership, strategic growth, and value creation, Bob has established himself as a seasoned executive with a proven ability to deliver impactful results across industries.

10

Contains Confidential Information for Naples Technology Ventures Investors: Do Not Distribute

# CHRIS HUBER    OPERATING PARTNER



**Chris** Is An Operating Partner With NTV Healthcare Innovation Fund.  With Over 25 Years Of Experience As A Consultant, Investor, And Operator, Chris Has Built A Distinguished Career Marked By Leadership Across Multiple Industries.

He Began His Journey At Accenture, Where He Focused On Large-scale Technology Implementations, Sales Strategies, And Played A Key Role In Integrating Sales Teams During The AT&T And SBC Merger.

As Business Performance Officer At DST Systems (Now SS&C), He Led A Board-driven Initiative To Evaluate Business Units And Spearheaded Corporate Development Efforts, Successfully Managing Both Domestic And International Acquisitions Of IFDS And BFDS.



As Chief Operating Officer Of Cobalt Ventures, The Private Equity Arm Of Blue Cross & Blue Shield Of Kansas City, He Led The Creation Of A New, Independent Medical Imaging Organization. In This Role, He Also Served As Chairman Of The Board For Element Medical Imaging, Where He Directed The Development Of Two New Medical Imaging Centers.

As The Founder Of Dunes Capital, He Provided Strategic Advisory Services, Fractional C-level Support, And Leads Merger And Acquisition Activities For His Clients.

Chris Holds A BSBA In Finance And Economics From Rockhurst University.

11

Contains Confidential Information for Naples Technology Ventures Investors: Do Not Distribute

# INVESTMENT FOCUS-HEALTHCARE



**NTV Healthcare Innovation Fund: Transforming An Industry Ready For Disruption**

The Healthcare Industry, Traditionally Conservative And Slow To Adapt, Struggles With Legacy Systems And Outdated Processes That Create Costly Inefficiencies. Recognizing This, The **NTV Healthcare Innovation Fund** Is Dedicated To Driving Transformation By Investing In Early-stage Companies That Leverage Cutting-edge Technologies Such As **Artificial Intelligence (AI)** To Revolutionize Healthcare.

This Fund Focuses On Partnering With Innovators Who Develop Solutions That:
- **Enhance Operational Efficiency**
- **Improve Quality Of Care**
- **Streamline Payment Integrity**
- **Reduce Fraud And Abuse**

By Building Strong Relationships And Supporting Forward-thinking Companies, Ntv Healthcare Innovation Fund Accelerates Meaningful Change In Healthcare While Ensuring Its Investments Align With A Proven Methodology And Strategic Vision For Success.

Contains Confidential Information for Naples Technology Ventures Investors: Do Not Distribute

# WHY NOW  -  MARKET



**Key Investment Insights for Early-Stage Opportunities:**

- **Challenging Capital Environment**
  Now marks the most difficult period in the past 13 years for early-stage entrepreneurs to secure funding, creating a unique window for strategic investors.

- **Attractive Valuations**
  Current valuations present compelling opportunities with significant upside potential for early-stage investors.

- **AI-Driven Disruption**
  Advanced technologies, particularly **AI**, are poised to revolutionize the healthcare sector, unlocking new efficiencies and innovation.

**Now is the time for investors to capitalize on these conditions by supporting forward-thinking startups with transformative potential.**

13

Contains Confidential Information for Naples Technology Ventures Investors: Do Not Distribute

# NTV: PROVEN PARTNER IN GROWTH AND VALUE



**Proven Track Record**
- Successfully invested in **30+ companies** and expanding
- Delivered a **6X MOIC** in Fund 1 (with 3 remaining exits, TVPI is more than 10X)
- Built a **strong reputation** and trusted network with VC firms and investment professionals

**Active Portfolio Involvement**
- Leads investment rounds and actively takes **board seats**
- Brings extensive **operational, technical, and business expertise** through its Advisors and Managing Partners

**Strategic Ownership**
- Focuses on acquiring **greater equity stakes** in invested companies
- Commits to taking **full investment allocation** when opportunities arise

**Selective Investment Approach**
- Invests only in areas where NTV can **add strategic value**

**NTV's disciplined strategy, active engagement, and proven results position it as a powerful force in driving transformative growth for its portfolio companies.**

14

Contains Confidential Information for Naples Technology Ventures Investors: Do Not Distribute

# NTV: DISCIPLINED INVESTMENT STRATEGY

NTV Employs A **Rigorous And Methodical Investment Process** Designed To Identify And Select High-potential Opportunities. By Adhering To **Stringent Investment Criteria**, NTV Ensures That Only The Most Promising, Innovative, And Scalable Companies Become Part Of Its Portfolio. This Unwavering Commitment To Diligence And Selectivity Results In A Portfolio Of **Exceptional Quality**, Built On Businesses With Strong Fundamentals, Growth Potential, And The Ability To Deliver Sustained Value.



**Initial Review**
**4,106 Companies**

Total number of companies our team has reviewed since 2020

**Analyst Calls**
**2,058 Companies**

Total number of calls our analysts have had with companies, where they have completed a write-up on

**Partner Calls**
**363**

Total number of companies our investment team has had more involvement with

**Portfolio Companies**
**37**

Total number of companies NTV has invested in

As of 02/01/2025

# TERMS



| | |
|---|---|
| **Offering** | ▶ **$100 MM+*** |
| **Purchase Price** | ▶ **$1MM * / Unit** |
| **Term** | ▶ **6 Year plus 2x2 ext.** |
| **Fees** | ▶ **2 x 20** |
| **Target Investments** | ▶ **$3 - $5MM** |

\*   Initial investment of 20% of Committed amount, the rest on Capital Call Basis

•   Fund will be administered by a Fund service company (current funds are administered by Apex Fund Services LLC , with $650B Assets Under Administration)

•   GP may increase the total offering  at its sole discretion by upto 50%.

•   GP may accept half units from certain LPS at its sole discretion.

16

Contains Confidential Information for Naples Technology Ventures Investors: Do Not Distribute



APPENDIX

# TEAM-NTV









### Eric Latin
Head of Investment Management

Eric is a Principal at Naples Technology Ventures (NTV), where he is responsible for investment sourcing, due diligence and oversight. He brings over 15 years of experience in technology and alternative investing.

Prior to joining NTV, he was Chief Operating Officer at Equable Shares, where he helped build the company and its business managing options trading strategies. Previously, Eric helped create the alternative investment program for Attucks Asset Management and spent nearly 10 years at HFR, where he managed hedge fund strategies for institutional investors.

Eric has a B.S. in Finance from Miami University.

### Winston Bennett
Analyst

Served as a Senior Venture Analyst at Excell Partners, where he focused on initial screening, market research, and due diligence on prospective companies
Master of Science Degree in Finance at the University of Rochester-Simon Business School

### Cameron Roth
Analyst

4+ years at NTV serving as an analyst, partaking in company diligence, extensive market research, ongoing engagement with portfolio companies

Contains Confidential Information for Naples Technology Ventures Investors: Do Not Distribute

# ADVISORS-NTV





**Geoff Blaisdell**
*Ex-CIO*
Western Asset Management



**Tom Filarski**
*Partner*
Steptoe & Johnson



**Frank Gori**
*Retired Senior Partner*
Ernst & Young LLP



**Douglas Hunt**
*Managing Director*
Consilium Partners



**Dominic Janssens**
*Senior Advisor & Global COO*
Macquarie Investment Management



**Georgette Kiser**
*Operating Executive*
The Carlyle Group



**Stephen Kneeley**
*President and CEO*
Driehaus Capital Management



**Vercie Lark**
*Former U.S. SBA Appointee*
DST Systems



**Frank Mergenthaler**
*Ex-CFO*
Interpublic Group



**Jeff Musgrove**
*Senior Operating Partner*
Wasabi Ventures



**Chris Perry**
*President-Global Sales*
Broadridge Financial Solutions



**Jimmy Rosenfield**
*Founder and CEO*
The Panther Consulting Group



**Adam Schneider**
*Partner*
Oliver Wyman's US Financial Services



**Frank Strauss**
*Managing Director*
Accenture

# THANK YOU



Contact: Brij Sharma
bsharma@naplestechnologyventures.com
Ph: 443-858-8587
Visit us at: www.naplestechnologyventures.com