UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FRANK GORI and JAMES
ROSENFIELD,

      Plaintiffs,

v.                                                  Case No:  2:25-cv-00746-JLB-KCD

BRIJ SHARMA,

      Defendant.
_____/

**ORDER**

This matter is before the Court on Plaintiffs' Frank Gori and James Rosenfield's Amended Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 10).  Plaintiffs seek a temporary restraining order (TRO) against Defendant Brij Sharma enjoining him from publishing or otherwise using Plaintiffs' likenesses to promote an investment fund.  (*Id.* at 1).  For the reasons set forth below, the Court concludes that Plaintiffs have demonstrated a substantial likelihood of success on the merits on their Florida Unauthorized Publication Act claim, a likelihood of irreparable injury in the absence of a temporary restraining order, that the equities weigh in Plaintiffs' favor, and that public interest favors injunctive relief.  Accordingly, Plaintiffs' Amended Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 10) is **GRANTED IN PART**, to the extent that a TRO shall be issued as set forth below.  The Court will set a hearing on Plaintiffs' motion for preliminary injunction by separate order.

## JURISDICTION AND VENUE

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. (*See* Doc. 2 at ¶¶ 1–4). The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S. Code § 1367(a). The Middle District of Florida is the proper venue under 28 U.S.C. § 1391.

## BACKGROUND

Plaintiffs are members of NTV, NTV Frontier Fund, LP, and NTV Prosperity Fund, LP (collectively, the "NTV Funds"). (Doc. 2 at ¶ 6). NTV Management, LLC ("NTV Management") serves as the manager for the NTV Funds. (*Id.* at ¶ 7). Mike Abbaei and Defendant each hold a 50% membership interest in NTV Management. (*Id.*). NTV Management and the NTV Funds were created to capitalize on Abbaei's experience in business investments. (*Id.* at ¶ 8). Under Abbaei's leadership, NTV Management's investments have succeeded. (*Id.* at ¶ 11). Plaintiffs allege that Defendant, however, has neglected to make deals, attend investor meetings, or take on daily work responsibilities. (*Id.* at ¶ 12).

In early 2025, Defendant disseminated a Prospectus advertising a new NTV fund, the NTV Healthcare Innovation Fund ("NTV Innovation"). (*Id.* at ¶ 14). However, this fund was never formed; no registered entity with that name exists in Florida or Delaware. (*Id.*). The Prospectus uses NTV Funds' logos, branding, and confidential information to promote what is alleged to be a nonexistent fund. (*Id.*; Doc. 10-2 at 11–30). Without Plaintiffs' knowledge or consent, the Prospectus inaccurately lists them as "advisors" to NTV Innovation, despite neither Plaintiff

2

having agreed to participate in NTV Innovation in any capacity. (Doc. 10 at ¶¶ 15–18; Doc. 10-2 at 29).

At different times in July 2025, each Plaintiff spoke to Defendant on different occasions about matters relating to the NTV Funds. (Doc. 2 at ¶¶ 20–22). During those conversations, Defendant did not inform Plaintiffs that he intended to, or already had, formed his own fund. (*Id.* at ¶ 23). Nor did Defendant tell Plaintiffs that he used their names and likenesses in his new fund's promotion materials. (*Id.*). It was not until Plaintiffs received and reviewed a copy of the Prospectus on August 14, 2025, that Plaintiffs learned that NTV Innovation's Prospectus used their likenesses. (*Id.* at ¶ 24).

On August 20, 2025, Plaintiffs filed this action against Defendant, alleging that Defendant's actions violated Florida's Unauthorized Publication Act, Florida's Common Law Misappropriation of Likeness, and the Florida Securities Investor Protection Act. (*See generally id.*). The same day, Plaintiffs filed a Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 4), which the Court denied without prejudice. (*See* Doc. 8). Before the Court now is Plaintiffs' Amended Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 10).

## DISCUSSION

Federal Rule of Civil Procedure 65 provides that the Court may issue a temporary restraining order without written or oral notice to the adverse party only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the

>   movant before the adverse party can be heard in opposition; and
>
>   (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

The Court may grant a temporary restraining order if Plaintiff demonstrates: (1) a substantial likelihood of success on the merits; (2) a likelihood of suffering irreparable injury without the restraining order; (3) that the threatened injury to it outweighs the harm the restraining order would cause other litigants; and (4) that the restraining order would not be adverse to the public interest. *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034–35 (11th Cir. 2001). "The purpose of a temporary restraining order, like a preliminary injunction, is to protect against irreparable injury and preserve the status quo until the district court renders a meaningful decision on the merits." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1231 (11th Cir. 2005). A temporary restraining order is an "extraordinary remedy" to which the Court should "pay particular regard for the public consequences" of granting. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted).

**I.      Substantial Likelihood of Success on the Merits**.

Plaintiffs bring a claim against Defendant for violation of Florida Statute section 540.08, Florida's Unauthorized Publication Act ("the Act"). (Doc. 2 at ¶¶ 25–29). Section 540.08 provides that "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person"

4

unless such person gives his or her "express written or oral consent to such use. . . ." Fla. Stat. § 540.08(1). The Act permits an aggrieved party to "bring an action to enjoin such unauthorized publication, printing, display or other public use," if consent is not obtained from "the person whose name, portrait, photograph, or other likeness is so used." Fla. Stat. § 540.08(2).

The Supreme Court of Florida has explained that the purpose of the Act "is to prevent the use of a person's name or likeness to directly promote a product or service because of the way that the use associates the person's name or personality with something else." *Tyne v. Time Warner Ent. Co., L.P.*, 901 So. 2d 802, 808 (Fla. 2005) (citation omitted).

"To maintain a cause of action for a violation of section 540.08, a plaintiff must allege that his or her name or likeness is used to directly promote a commercial product or service . . . ." *Fuentes v. Mega Media Holdings, Inc.*, 721 F. Supp. 2d 1255, 1258 (S.D. Fla. 2010); *see Lane v. MRA Holdings, LLC*, 242 F. Supp. 2d 1205, 1213 (M.D. Fla. 2002) (explaining that unauthorized use of names and likeness of a person violates section 540.08 if "used in advertising the user's goods or services, . . . placed of merchandise marketed by the user," or "used in connection with services rendered by the user.") (quoting Restatement (Third) of Unfair Competition § 47)); *Loft v. Fuller*, 408 So. 2d 619, 622–23 (Fla. 4th DCA 1981) ("In our view, Section 540.08 . . . is designed to prevent the unauthorized use of a name to directly promote the product or service of the publisher.").

5

At this stage, Plaintiffs have shown that Defendant used their names and likenesses in his Prospectus to promote NTV Innovation without their consent. (*See* Doc. 2; *see also* Doc. 10 & Doc. 10-2 at 11–29). Therefore, Plaintiffs have a substantial likelihood of succeeding on this claim.

## II.     Irreparable Harm.

"An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990). Plaintiffs argue that continued dissemination of the Prospectus will harm their reputations and business interests by falsely associating Plaintiffs with a non-existent entity. (Doc. 10 at 6–8). Specifically, Plaintiffs contend that "Defendant's unauthorized use of Plaintiffs' names, images, and likenesses to promote a competing entity undermines the care with which Plaintiffs choose to invest and affects their reputation and credibility in the investment industry." (*Id.* at 7).

Because "monetary damages cannot adequately compensate Plaintiffs for harm to their goodwill or reputation," Plaintiffs have demonstrated that they will suffer irreparable harm in the absence of a TRO. *Bentley Motors Corp. v. McEntegart*, 899 F. Supp. 2d 1291, 1303 (M.D. Fla. 2012); *see also Nane Jan, LLC v. Seasalt & Pepper, LLC*, No. 2:14-CV-208-FTM-29CM, 2014 WL 5177655, at *7 (M.D. Fla. Oct. 14, 2014) ("Damage to plaintiff's reputation and goodwill would be difficult to quantify and could not be undone through an award of money damages.").

In further support of irreparable harm, Plaintiffs argue that Defendant's distribution of the NTV Innovation Prospectus will cause confusion in the marketplace. (Doc. 10 at 7). The Court agrees that the Prospectus is likely to confuse investors into believing that Plaintiffs endorse and are actively involved in NTV Innovation. (*See* Doc. 10-2 at 11–29). Not only does it list Plaintiffs as advisors to NTV Innovation, but it also references investments of the NTV Fund in connection with the launch of NTV Innovation, insinuating that these funds are related. (*See id.* at 16–17).

On these facts, dissemination of the NTV Innovation Prospectus is likely to cause marketplace confusion and, therefore, result in irreparable harm to Plaintiffs. *See E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1530 (11th Cir. 1985) ("[A] sufficiently strong showing of likelihood of confusion may by itself constitute a showing of substantial likelihood of prevailing on the merits and/or a substantial threat of irreparable harm.").

### III.   Balance of Harms.

The balance of harms weighs in favor of Plaintiffs. If a TRO is not issued, Defendant can continue using Plaintiffs' names and likenesses to promote NTV Innovation. Taking Plaintiffs' Verified Complaint as true, Defendant is not authorized to promote his fund in this way; therefore, the balance of harms strongly favors Plaintiffs. (Doc. 2 at ¶¶ 16, 23); *see Callaway Golf Co. v. Golf Clean, Inc.*, 915 F. Supp. 1206, 1215 (M.D. Fla. 1995) (finding that the balance of harms "weighs heavily in favor of [plaintiff]" where "plaintiff faces the risk of injury to its business

relationships, reputation, and good will . . ."); *Delta T, LLC v. Kale Fans Am. S.A. De C.V.*, No. 620CV170ORL40EJK, 2020 WL 1674328, at *4 (M.D. Fla. Feb. 25, 2020) (finding that the balance of harms weighed in favor of plaintiff where plaintiff faced "continued harm to its brand and reputation . . . because Defendant has no right to engage in . . . infringing activities").

### IV. Public Interest.

Lastly, "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (citations omitted). Here, public interest is served by preventing customer confusion or deception. *See Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1321 (11th Cir. 2010); *see also HornBlasters, LLC v. Gmirr*, No. 8:19-CV-01164-T-TGW, 2020 WL 3250246, at *3 (M.D. Fla. Apr. 1, 2020) ("The public has an interest in avoiding confusion in the marketplace and consumer deception, by its very nature, is against the public interest."); *Brecka v. Individuals, Entities, & Unincorporated Associations*, No. 24-60162-CIV, 2025 WL 438196, at *1–2 (S.D. Fla. Jan. 23, 2025), *report and recommendation adopted*, No. 24-60162-CIV, 2025 WL 435913 (S.D. Fla. Feb. 7, 2025) (issuing a permanent preliminary injunction in part because it serves the public interest to enjoin defendants' use of plaintiff's "name, image, likeness and/or persona without authorization" to avoid "marketplace confusion and . . . false[] suggest[ion] that Plaintiff is affiliated with Defendants and endorses Defendants' products."); *Gaffigan v. Individual, Bus. Entity, or Unincorporated Ass'n Operating Domain Names, stephenmgaffiganpa.com &*

8

*attorneystephenmgaffiganpa.com*, No. 23-62077-CIV, 2023 WL 9032341, at *2 (S.D. Fla. Nov. 20, 2023) (issuing a preliminary injunction pursuant to Fla. Stat. § 540.08 where customers are "likely to be misled and confused by" defendant's "misappropriation of [plaintiff]'s [n]ame and the related firm names" and enjoining such "unauthorized use" serves the public interest).

## V. Bond Requirement.

Federal Rule of Civil Procedure 65(c) specifies that the Court "may issue a . . . temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "[T]he amount of security required . . . is a matter within the discretion of the trial court. . . ." *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005) (citation and internal quotation marks omitted).

The Court finds that a bond of $5,000 is sufficient to protect Defendant against any loss associated with an erroneous injunction. Accordingly, the Court requires Plaintiffs to post a bond of $5,000. The bond amount may be revisited at the preliminary injunction hearing.

## VI. Scope of the Temporary Restraining Order.

Plaintiffs have demonstrated entitlement to a TRO. However, the Court declines to issue a TRO to the extent requested by Plaintiffs. (*See* Doc. 10-3). At this juncture, the Court declines Plaintiffs' request to require Defendant to provide it or Plaintiffs with a list of all recipients of the Prospectus. It will not require

9

Defendant to communicate in writing that the Prospectus improperly identifies Plaintiffs as advisors, to which they did not consent. The Court may revisit these issues, if appropriate, at the hearing on the motion for preliminary injunction. The Court cautions Defendant to have a list of all recipients of the Prospectus on hand for the Court's review should it so request. Lastly, the Court strongly encourages the parties to confer about expeditiously resolving this matter. Should the parties file a joint motion to stay this matter because they are in good faith settlement discussions, the Court would liberally grant such a motion.

## CONCLUSION

Accordingly, it is **ORDERED**:

1. Plaintiffs' Amended Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 10) is **GRANTED IN PART** as set forth herein.

2. Defendant is **ENJOINED** from using, referencing, or otherwise identifying Plaintiffs' names, likenesses, or identities in any promotional, marketing, fundraising, or investor-facing materials relating to NTV Innovation or any related venture.

3. Defendant is **ENJOINED** from making or publishing any statement or representation, directly or indirectly, suggesting that Plaintiffs support, endorse, or are affiliated in any way with NTV Innovation or any related venture.

4. Plaintiffs are **REQUIRED** to post a $5,000 bond with the Clerk of Court

   before 5:00 p.m. on August 25, 2025.

5. This Temporary Restraining Order shall remain in effect for fourteen (14) days from the date of this Order unless the Court orders otherwise. The Court will set a hearing on Plaintiff's motion for preliminary injunction by separate order.

6. No later than August 25, 2025, Plaintiff shall serve Defendants with process, including a copy of all pleadings in this case and this Order, and file proof of same in this case.

**ORDERED** in Fort Myers, Florida, on August 22, 2025.

*[signature]*
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE